**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4199-18

VINCENT ROGGIO and
CALLIE ROGGIO,

     Plaintiffs-Appellants,

v.

JPMORGAN CHASE BANK, N.A.,
GARY CHROPUVKA, and
JOANNE MCKENNA,

     Defendants-Respondents,

and

LEONARD ZUCKER, ZUCKER
GOLDBERG & ACKERMAN, LLC,

     Defendants.

_____

Argued September 23, 2021 – Decided October 18, 2021

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1586-16.

Vincent Roggio, appellant, argued the cause pro se.

Owen Lipnick argued the cause for respondent JPMorgan Chase Bank, N.A. (Bertone Piccini, LLP, attorneys; Owen Lipnick, on the brief).

Daniel L. Finestein argued the cause for respondents Gary Chropuvka and Joanne McKenna (Finestein & Malloy, LLC, attorneys; Daniel L. Finestein and Russell M. Finestein, on the brief).

PER CURIAM

In June 2006, Washington Mutual Bank (WaMu) filed an action against plaintiff Vincent Roggio seeking to foreclose on his real property in Red Bank due to his near-immediate default on a $3 million loan. Washington Mut. v. Roggio, No. A-3170-10 (App. Div. Aug. 23, 2012) (slip op. at 2). Roggio claimed he withheld payments because the bank "damaged his credit rating by filing an excessive number of credit inquiries." Ibid. Since then, Roggio and his wife, Callie Roggio, also a plaintiff in this proceeding, have been named defendants in a mortgage foreclosure action regarding their marital property in Rumson. The total value of their outstanding loans exceeded $6 million. Both properties have long since been sold at sheriff's sales.[1]

---

[1] Defendants Gary Chropuvka and Joanne McKenna participated in the appeal for the sole purpose of protecting title to the Red Bank property, which they now own.

2

A-4199-18

Under Rule 4:6-2(e), Judge Katie A. Gummer dismissed with prejudice plaintiffs' amended complaint against Chase, except a negligence count. She denied plaintiffs' cross-motion for summary judgment. Thereafter, Judge Lourdes Lucas denied plaintiffs' motion for reconsideration seeking reinstatement of the amended complaint and dismissed the remaining count of the complaint with prejudice. We affirm.

By way of background, WaMu entered a Federal Deposit Insurance Corporation (FDIC) receivership on September 25, 2008. Defendant JPMorgan Chase assumed WaMu's assets, including plaintiffs' loans. In the foreclosure proceedings and on appeal, plaintiffs have argued Chase lacks standing because Chase never properly acquired the mortgages, since they were placed in a trust after WaMu's collapse. Plaintiffs also maintain Chase committed fraud by claiming a right to the loans.

Plaintiffs contend New Jersey's courts lacked jurisdiction over the foreclosures: because of the federal receivership and because they sued for damages allegedly caused by WaMu in the United States District Court for the District of Columbia pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821. Plaintiffs assert that lawsuit stripped New Jersey courts of the authority to act.

A-4199-18

Plaintiffs consented to stay the federal court action for years after unsuccessfully seeking to enjoin the foreclosures. Ultimately, they reactivated the federal court proceeding. Plaintiffs have vigorously pursued motion practice in both the state and federal forums.

When on July 8, 2016, plaintiffs filed the first amended complaint, they averred they had received new information confirming that the loan was sold to a trust before Chase acquired it. The complaint sought: (1) a declaratory judgment voiding the final foreclosure judgment on the Red Bank property due to Chase's failure to substitute itself for WaMu as the plaintiff, and due to the Chancery Division's lack of jurisdiction; (2) fraud damages based on the notion that Chase had no right to the loans because they were sold to a securitized trust; (3) recission of the deed transferring the Red Bank property to Chropuvka and McKenna and an order "compelling Chase to deed the [Red Bank] [p]roperty to" plaintiffs; (4) punitive, treble, and compensatory damages under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -224; (5) common law fraud damages because WaMu "assigned" the Red Bank property to Chase after acquiring it at the sheriff's sale; (6) CFA damages because "Chase defrauded the IRS"; (7) common law fraud damages for reducing the value recovered at the sheriff's sale; (8) negligence damages for failure "to mitigate the losses associated with

4

the foreclosure and the [s]heriff's [s]ale"; and (9) damages for breach of the implied covenant of good faith and fair dealing.

Chase moved to dismiss, contending counts two through five were barred by collateral estoppel because they were based on plaintiffs' argument that Chase "lacked standing to prosecute the foreclosure actions because they no longer owned the mortgage note." Chase also argued the recission claim was time-barred under laches, as the sheriff's sale was conducted two years prior. Concerning the common law fraud and CFA allegations, Chase asserted plaintiffs provided no evidence of material misrepresentations. Furthermore, the cause of action for breach of the covenant of good faith and fair dealing should have been filed in the foreclosure actions and was thus barred by the entire controversy doctrine. Plaintiffs cross-moved for summary judgment, asserting the court lacked jurisdiction under FIRREA, and that res judicata and collateral estoppel did not apply because their fraud claims were based on new evidence.

Judge Gummer found counts two, three, four, five, and nine were barred by collateral estoppel because they implicated the standing issue upon which the Appellate Division previously ruled. The court dismissed count six because plaintiffs "failed to identify a legal basis that would give them the authority to

5

pursue claims of defrauding the IRS," and count seven because it spoke to negligence, not fraud, and rested in part on the standing issue we previously decided. However, the court denied Chase's motion to dismiss count eight as "plaintiffs ha[d] at least articulated a basis by which Chase could potentially be held responsible" for negligence.

Plaintiffs, now pro se, then moved for reconsideration,[2] which the court addressed on March 31, 2017. Plaintiffs stated the court's decision was palpably incorrect because it never mentioned fraud, and that the court "completely overlooked the fact that it had no [subject matter] jurisdiction to decide this case." Judge Lourdes denied that motion since plaintiffs did not meet the palpably incorrect standard and the court's earlier determination "clearly addressed the arguments that were raised before it . . . ."

Plaintiffs then filed a Rule 4:50-1 motion alleging lack of jurisdiction and violation of due process, restating that the court had no jurisdiction under FIRREA. Because one claim was still pending and there was no final judgment, the court viewed plaintiffs' motion as a motion for reconsideration. Finding

---

[2] In their reply brief on the motion, plaintiffs claimed they were instead moving to correct the court's decision under Rule 4:50-1.

plaintiffs again failed to meet the standard and merely sought a second bite of the apple, the court denied the motion.

On April 12, 2019, the court granted Chase's motion for summary judgment on count eight, holding that "merely putting a lock on the property and taking minimal steps to protect the lender's interest would not rise to the level of control needed to create a duty as a mortgagee in possession." Plaintiffs appealed. They raise the following issues:

> POINT I
>
> WHETHER ON SEPTEMBER 25, 2008 WHEN THE FDIC TOOK CONTROL OF "ALL" WASHINGTON MUTUAL BANK'S "ASSETS AND LIABILITIES" THE STATE CHANCERY COURT WAS STRIPPED OF PERSONAL AND SUBJECT MATTER JURISDICTION OVER THOSE FDIC ASSETS AND ONLY THE FDIC HAD JURISDICTION TO DECIDE THOSE ASSETS AND LIABILITIES IN FEDERAL COURT WITH ORIGINAL SUBJECT MATTER QUESTION JURISDICTION.
>
> POINT II
>
> WHETHER THE CHANCERY COURT'S FEBRUARY 2, 2017 FINAL DECISION VIOLATED APPELLANT'S RIGHT TO LITIGATE HIS BORROWER CLAIMS.
>
> POINT III
>
> WHETHER A FALSE CERTIFICATION SUBMITTED BY CHASE TO THE PANEL ON

7

DIRECT APPEAL CAUSED THE PANEL TO RELY ON A FALSE PRESUMPTION.

POINT IV

WHETHER A PROPERTY FORECLOSURE BASED ON FALSE RECORDS MUST BE REVERSED.

I.

Plaintiffs' first point is that the state courts lacked jurisdiction over the mortgages. Unfortunately, the argument entirely lacks merit. The FDIC receivership has no direct impact on the ability of state courts to address mortgage foreclosures, so long as the plaintiff in those proceedings owns the debt. But in any event, this argument has been previously raised and rejected.

Collateral estoppel bars relitigation of issues decided in a prior action. See In Re Vicinage 13 of the N.J. Super. Ct., 454 N.J. Super. 330, 341-42 (App. Div. 2018). Here, the jurisdiction issue was settled since the final judgment in the foreclosure proceedings, which plaintiffs fully litigated. See ibid. The properties were eventually sold.

Plaintiffs argue state foreclosure proceedings cannot continue while a federal action is pending. But plaintiffs' misconduct allegations against WaMu and the FDIC are wholly unrelated to Chase's in rem claims in the foreclosure proceedings. These are different causes of action with different remedies.

A-4199-18

Repeatedly asserting that the District Court maintains exclusive jurisdiction does not make it so.

Indeed, FIRREA in no way bars mortgage foreclosure proceedings from moving forward. Cases clarifying that FIRREA does not bar continuation of mortgage foreclosure are legion. Once the loans were sold to Chase, that distanced Chase in its pursuit of its remedies against the mortgagors. WaMu did not own or have access to the loans. The mortgages were not under FDIC control, and the New Jersey courts retained jurisdiction.

FIRREA does strip jurisdiction from state courts over other borrowers' claims—which must be litigated in federal court after the exhaustion of the administrative process. See Glover v. FDIC, 698 F.3d 139, 150 (3d Cir. 2012). That may actually bar plaintiffs' complaint here. In any event, we reiterate— FIRREA does not strip state courts of jurisdiction to address mortgage foreclosures.

## II.

Plaintiffs also assert the court "violated [their] right to litigate [their] borrower's claims." They take the position that the appellate affirmance of the Chancery Division's June 2, 2010 decision only went to standing, not their borrower claims or jurisdiction.

A-4199-18

The trial court, however, realized plaintiffs' complaint was grounded on their position that Chase lacked standing due to the alleged securitization, an issue we found wanting in 2012. Plaintiffs' "borrower claims" stem from their assertion that Chase caused them harm by improperly enforcing the loans, which has been previously resolved against them.

## III.

Plaintiffs also argue that the prior decision rested on the "false presumption" of a "false certification." They point to a letter from a Freedom of Information Act, 5 U.S.C. § 552, branch chief explaining that the FDIC could not determine the owner of the loans based on the information plaintiffs provided. That in no way demonstrates a false certification by any Chase employee. The letter does not impact our prior decision.

## IV.

Plaintiffs' final point is that the mortgage foreclosures must be reversed because they were based on false records. That claim is so lacking in merit as to not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION